UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

HENRY LEE HURT,

                Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

                Defendants.

_____/

Case No. 1:22-cv-1148

Honorable Ray Kent

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 5.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.*, *v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the MDOC itself, MDOC Director Heidi Washington, and the following DRF personnel: Warden Randee Rewerts, Food Service Supervisor Unknown Gavenda, Food Service Director T. Lebo, and Classification Director J. Burns.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

Plaintiff alleges that on June 1, 2022, he was called to the Control Center to be reviewed on a misconduct ticket. (ECF No. 1, PageID.3.) Plaintiff alleges that the sergeant in charge reviewed misconduct tickets for three other inmates but that his ticket was not reviewed. (*Id.*) According to Plaintiff's exhibits, he had been issued a misconduct ticket for stealing chicken from the kitchen. (ECF No. 1-6, PageID.14.) The ticket, however, was lost and therefore dismissed. (*Id.*)

While the ticket was pending, Plaintiff had been "laid-in," *i.e.*, he was not called to work his kitchen assignment. (ECF No. 1, PageID.3.) After the ticket was dismissed, he sent a request to Defendant Burns to be placed back on kitchen assignment and to be paid for May 31, June 1, June 3, June 4, June 5, and June 6, 2022. (ECF No. 1-1, PageID.10.) Plaintiff contends that on June 8, 2022, he received notice from Defendant Burns that he was to remain on his current work detail because the misconduct had been dismissed. (ECF No. 1, PageID.3.)

Plaintiff's exhibits include a copy of a Prisoner Program and Work Assignment Evaluation. (ECF No. 1-6, PageID.14.) The evaluation is undated. The evaluation was completed by Defendant Gavenda and signed by Defendant Lebo. (*Id.*) The following is written in the comments and recommendations section:

> After reviewing cameras a ticket was written for theft of chicken that can clearly be viewed on video. The ticket was lost and therefore not heard or dismissed. By not fault of my own the theft ticket did not get heard and would like him [referring to Plaintiff] removed from his assignment.

(*Id.*) Plaintiff was ultimately dismissed from his job assignment.

On June 10, 2022, Plaintiff wrote a grievance because Defendant Lebo had told Plaintiff that "he had not received the memo from classification and . . . that [Plaintiff] could not remain on assignment at that time." (ECF No. 1, PageID.3–4.) The grievance coordinator indicated receipt of Plaintiff's grievance on June 15, 2022. (ECF No. 1-5, PageID.13.) Plaintiff's grievance was

denied on June 30, 2022. (ECF No. 1-7, PageID.15.) His Step II appeal was denied by Defendant Rewerts on July 19, 2022. (ECF No. 1-8, PageID.16–17.)

Based on the foregoing, Plaintiff asserts violations of his Fourteenth Amendment due process and equal protection rights, as well as violations of MDOC Policy Directive 05.01.100. (ECF No. 1, PageID.5.) Plaintiff also appears to invoke the First and Eighth Amendments by referencing retaliation and deliberate indifference. (*Id.*) He seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.6.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Claims Against the MDOC

As noted *supra*, Plaintiff has named the MDOC itself as a Defendant to this action. Section 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). However, neither the State of Michigan nor the MDOC is a "person" within the meaning of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) (holding a state is not a "person"); *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will* and holding that the MDOC is not a "person.").

Moreover, even if the MDOC or the State of Michigan were "persons" under § 1983, Plaintiff's claim would be properly dismissed because the MDOC and the State of Michigan are immune from suit under the Eleventh Amendment. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by

6

statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

For these reasons, Plaintiff cannot maintain his claims against the MDOC, and the Court will dismiss the MDOC as a Defendant.

### B.      Claims Against Defendant Washington

Although Plaintiff names MDOC Director Washington as a Defendant, Plaintiff does not make any factual allegations against Washington. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)) (requiring allegations of

personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention Washington in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). All claims against Defendant Washington, therefore, are properly dismissed.

### C.    Claims Against Defendant Rewerts

Plaintiff has named Warden Rewerts as a Defendant, presumably because Warden Rewerts denied Plaintiff's Step II grievance regarding his dismissal from his job assignment. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts suggesting that Defendant Rewerts encouraged or condoned the conduct of his subordinates, or authorized, approved, or knowingly acquiesced in that conduct. Plaintiff avers only that Defendant Rewerts denied his Step II grievance. As noted above, that is insufficient to impose § 1983 liability. *See Shehee*, 199 F.3d at 300. Plaintiff's conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant Rewerts was personally involved in the events described in Plaintiff's complaint. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Furthermore, to the extent Plaintiff suggests that Defendant Rewerts violated his rights by denying his Step II grievance, the Court notes that Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also*

9

*Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Rewerts's conduct did not deprive him of due process.

Moreover, Plaintiff's First Amendment right to petition the government was not violated by Defendant Rewerts's denial of Plaintiff's Step II grievance. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, Defendant Rewerts's denial of Plaintiff's Step II grievance did not bar Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by

10

his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff has failed to state a cognizable claim against Defendant Rewerts based on his denial of Plaintiff's Step II grievance.

### D.      First Amendment Retaliation Claims

Plaintiff vaguely alleges that "the retaliation . . . violated [his] 14th U.S. Constitutional Amendment right to equal protection and due process." (ECF No. 1, PageID.5.) To the extent Plaintiff invokes the protections of the First Amendment, he fails to set forth a plausible retaliation claim in his complaint.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's

11

alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotations omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Here, Plaintiff merely alleges the ultimate fact of retaliation. Even if Plaintiff's dismissal from his job assignment qualifies as adverse action, Plaintiff's complaint is devoid of allegations suggesting that he engaged in protected conduct prior to that dismissal. Plaintiff's grievances constitute protected conduct, but he has not, and cannot, show that the loss of his job was motivated by such protected conduct because the adverse action preceded the protected conduct. Plaintiff's speculative allegations fail to set forth plausible First Amendment retaliation claims, and such claims will, therefore, be dismissed.

### E.    Eighth Amendment Deliberate Indifference Claims

Plaintiff also vaguely states that "the . . . deliberate indifference violated Plaintiff's 14th U.S. Constitutional Amendment right to equal protection and due process." (ECF No. 1,

PageID.5.) To the extent Plaintiff invokes the protections of the Eighth Amendment, he fails to set forth a plausible deliberate indifference claim.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

The loss of a prison job, regardless of the reason, does not amount to cruel and unusual punishment. *See Ivey*, 832 F.2d at 955. "[F]orcing an inmate to live without such privileges as bingo, a television, or a job does not constitute the infliction of serious pain necessary to state an Eighth Amendment claim." *Smith* v. Sapp, Nos. 97–5642, 97–5921, 1998 WL 384620, at *1 (6th Cir. June 19, 1998) (citing *Rhodes,* 452 U.S. at 347–49) (discussing that state actions that limit jobs and educational opportunities do not constitute punishments under the Eighth Amendment,

much less punishments that inflict unnecessary and wanton pain). As a consequence, Plaintiff fails to state an Eighth Amendment claim, and such claim will be dismissed.

### F.    Fourteenth Amendment Claims

#### 1.    Equal Protection

Plaintiff contends that his equal protection rights were violated when he was dismissed from his job assignment. (ECF No. 1, PageID.5.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws[,]" which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. Where legislation singularly and negatively affects a "quasi-suspect" class such as one defined by gender, the level of scrutiny is "intermediate," and the law is valid if it is "substantially related to a sufficiently important government interest." *Id.* at 440–41. However, a state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

Plaintiff's claim does not implicate a fundamental right, as he does not have a "constitutional right to a particular job or any job." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *see also Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003). Plaintiff also does not allege that he is a member of a suspect class or that Defendants discriminated against him because he was a member of a suspect or quasi-suspect class. "[P]risoners are not a suspect class," *Hadix*

14

*v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000), "nor are classifications of prisoners," *Mader v. Sanders*, 67 F. App'x 869, 871 (6th Cir. 2003).

Plaintiff's claim, therefore, is the prototypical "class of one" equal protection claim "where the plaintiff alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The Supreme Court has refused to recognize "class of one" claims in the public employment context. *See Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 606–07 (2008); *see also Davis v. Prison Health Servs.*, 679 F.3d 433, 442 (6th Cir. 2012) (acknowledging that *Engquist* prohibits "class of one" claims in the public employment context— even in that prison employment case—but concluding that Davis raised a traditional class-based discrimination claim, not a "class of one" claim); *Carter v. Mich. Dep't of Corr.*, No. 1:13-cv-37, 2013 WL 3270909, at *13 (W.D. Mich. Jun. 27, 2013) ("Deciding whether a prisoner should be permitted to work in a particular prison job is precisely the sort of discretionary decision contemplated by the Court in *Engquist*."); *Johnson v. Grayson Cnty. Det. Ctr.*, No. 4:21-cv-P13-JHM, 2021 WL 3025452, at *3 (W.D. Ky. Jul. 16, 2021) (collecting cases and noting that "[s]everal courts have extended the reasoning in *Engquist* to the prison context"); *Brown v. Partin*, No. 1:20-CV-235-TRM-CHS, 2020 WL 5077037, at *2 (E.D. Tenn. Aug. 27, 2020) ("[A] 'class of one' theory . . . is not available in the context of prison employment."). Plaintiff, therefore, cannot maintain Fourteenth Amendment equal protection claims against Defendants, and such claims will be dismissed.

## 2.      Due Process

Plaintiff also contends that his dismissal from his job assignment violated his due process rights. (ECF No. 1, PageID.5.) It appears that Plaintiff believes that he should not have been dismissed from the assignment because the misconduct charging him with theft of chicken from

the kitchen was dismissed. The Fourteenth Amendment protects an individual from deprivation of life, liberty[,] or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

Plaintiff's claim fails at the first step, however, because "no prisoner has a constitutional right to a particular job or to any job." *See Ivey*, 832 F.2d at 955; *see also Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (discussing that prisoners have no constitutional right to rehabilitation, education or jobs); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (holding that there is no constitutional right to prison employment); Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *See Carter v. Tucker*, 69 F. App'x 678, 80 (6th Cir. 2003) (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991); *James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir. 1989)). Consequently, Plaintiff's loss of his job assignment in the kitchen did not trigger a right to due process, and his Fourteenth Amendment due process claims will be dismissed.

### G.    Violations of MDOC Policy

Plaintiff also suggests that Defendants violated MDOC Policy Directive 05.01.100 by removing him from his job assignment. (ECF No. 1, PageID.5.) Section 1983, however, does not provide redress for violations of state law. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995);

*Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). The only possible way a policy might enjoy constitutional protection would be through the Fourteenth Amendment's Due Process Clause.

To demonstrate a due process violation, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause; and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts, however, have routinely recognized that a prisoner does not enjoy any federal protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164. Plaintiff's allegation that Defendants violated MDOC policy and procedure, therefore, fails to raise a cognizable federal constitutional claim.

Moreover, to the extent Plaintiff seeks to invoke this Court's supplemental jurisdiction over state law claims for violations of MDOC policy, this Court declines to do so. Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against

17

needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims alleging violations of MDOC policy will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over them.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is

barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   December 30, 2022                    /s/ Ray Kent
                                                                Ray Kent
                                                                United States Magistrate Judge